FILED
2025 Jan-28  AM 10:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **MICAH WASHINGTON,** | ) | |
| **JACORIEN HENRY, and** | ) | |
| **TORIS HOWARD, as Next of Kin to** | ) | |
| **Minor S.W.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:** _____ |
| | ) | |
| **CITY OF REFORM, DANA** | ) | **JURY TRIAL DEMANDED** |
| **ELMORE, and JODY ELMORE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**COME NOW**, the Plaintiffs, Micah Washington, Jacorien Henry, and Toris Howard, as Next of Kin for Minor S.W., by and through the undersigned counsel of record, and alleges the following:

## PRELIMINARY STATEMENT

This civil action arises from an incident that occurred on December 2, 2023, in Pickens County, Alabama. As alleged more fully herein, Plaintiffs were stopped on the shoulder of a rural road changing a flat tire when Defendant Officer Dana Elmore and Deputy Jody Elmore violated their constitutional rights. Fortunately for Plaintiffs, a portion of this encounter was captured on video and quickly went viral. This civil action seeks redress for the violation of Plaintiffs' rights as guaranteed by

1

the Eighth and Fourteenth Amendments of the United States Constitution and Alabama law.

## PARTIES

1. **Plaintiff Micah Washington (hereinafter "Mr. Washington")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age.

2. **Plaintiff Jacorien Henry (hereinafter "Mr. Henry")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age.

3. **Plaintiff Toris Howard (hereinafter "Ms. Howard")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. Ms. Howard is bringing this action as Next of Kin to her minor son, S.W.

4. **Defendant City of Reform (hereinafter "Defendant City")** is a municipality of the State of Alabama, which oversees the Reform Police Department and its officers. Defendant Dana Elmore referenced herein was employed by the City of Reform and was acting as an agent for the City of Reform while engaged in the unlawful conduct that forms the basis of this Complaint. Defendant City of Reform is/was responsible for the policies and practices of the Reform Police Department that was carried out by Defendant Dana Elmore in this case.

5. **Defendant Dana Elmore (hereinafter "Officer Elmore")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years

of age. At all times relevant to this action, Officer Elmore was employed as a Police Officer by the City of Reform, acted under the color of law, and acted within the scope of her employment. Officer Elmore is being sued in her individual and official capacities.

6. **Defendant Jody Elmore ("Deputy Elmore")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. At all times relevant to this action, Deputy Elmore was employed as a Deputy Sheriff by the Pickens County Sheriff's Office, acted under the color of law, and acted within the scope of his employment. Defendant Elmore is being sued in his individual and official capacities.

7. Defendant Officers used herein refers to both Defendant Dana Elmore and Defendant Jody Elmore.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1343(a)(4), and 42 U.S.C. § 1988(a), as this action seeks redress for the violation of Plaintiffs' rights secured by the Constitution of the United States, pursuant to 42 U.S.C. § 1983.

9. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), as they arise from the same case or controversy and are so related to Plaintiffs' 42 U.S.C. § 1983 claims.

10. Venue is proper in the Northern District of Alabama, pursuant to 28 U.S.C. §1391(b)(2), as the events giving rise to this action occurred within this Court's judicial district.

## FACTUAL ALLEGATIONS

### I.     The Flat Tire in Pickens County, Alabama.

11. On the morning of December 2, 2023, Mr. Washington and Mr. Henry were traveling along County Road 27 in Pickens County, Alabama when they stopped to change a flat tire. Mr. Washington was driving.

12. Mr. Washington stopped the vehicle on the shoulder of the road to change the tire. They were only yards away from Mr. Washington's destination at his aunt's house but could not drive any further.

13. Mr. Washington and Mr. Henry walked to his aunt's house to get tools to change the flat tire and to recruit his brother, S.W., to assist them. The men went back to the car and began changing the tire.

14. A few minutes later, Defendant Officer Dana Elmore stopped and joined the men on the side of the road. Plaintiffs assumed that Officer Elmore stopped to assist them and/or to ensure that they were not injured by any vehicle that may have passed while they were on the shoulder of the road.

15. To their surprise, Officer Elmore angrily approached them and demanded to see their identification.

16. Mr. Washington asked why this was necessary as they had not committed any crime and had done nothing wrong.

17. Sensing Officer Elmore's hostility, Plaintiffs complied with her demand and provided their identification.

18. Officer Elmore instructed Mr. Washington to stand next to her car. Mr. Washington asked Officer Elmore why this was necessary if he was not being arrested or detained.

19. Mr. Washington instinctively pulled his cell phone out to film the encounter because he was unsure of Officer Elmore's intentions at this point.

20. Officer Elmore became irate and more aggressive as Mr. Washington began to film the encounter. Officer Elmore then deployed her taser into Mr. Washington's person for several seconds and demanded that he get on the ground.

21. Mr. Washington cried and screamed out for help. He exclaimed, "I have never been shot before!" (referring to the taser).

22. He also asked Officer Elmore, amid pleading for her to stop, "Why do you have your feet on my back? I'm not even doing anything. We are out here changing a tire!"

23. Officer Elmore mocked Mr. Washington as he asked her why she was being so aggressive.

24. Officer Elmore demanded that Mr. Washington "shut the fuck up or [she] would tase [him] again."

25. Mr. Washington begged Mr. Henry to get him help. He was afraid that Officer Elmore would kill him.

26. Mr. Henry ran to Mr. Washington's aunt's house. At this time, Mr. Henry was not instructed that he was being arrested, detained, or not free to leave.

27. Fortunately for Mr. Washington, his sixteen-year-old brother, S.W., began to film the encounter from his point of view.

## II. The Viral Video of Officer Elmore Tasing Mr. Washington Without Justification.

28. In a video captured by S.W., Officer Elmore was seen handcuffing Mr. Washington as he laid face-first on the ground.

29. Officer Elmore demanded that Mr. Washington stand and escorted him to the hood of her police vehicle.

30. Officer Elmore laid Mr. Washington over the front of the vehicle as he remained handcuffed behind his back. He was not resisting and obeyed all of Officer Elmore's commands.

31. Despite complying with all demands, Officer Elmore positioned her taser in the middle of Mr. Washington's back and aggressively demanded that he "stay still."



***Photo 1: Officer Elmore positioning her taser in
Mr. Washington's back although he was handcuffed and compliant.***

32. Mr. Washington, out of an abundance of caution, voluntarily stated that he had a

lawfully owned gun on his person and reiterated that he had done nothing wrong.

33. Officer Elmore removed the gun from Mr. Washington's person and stated, "oh

yeah!"



***Photo 2: Officer Elmore clearly removed the gun from Mr. Washington's
person. At this point, he was unarmed, handcuffed, and completely compliant.***

7

34. Mr. Washington questioned why Officer Elmore said, "oh yeah," and she deployed the taser into his back for several seconds.

35. She demanded Mr. Washington to "shut the fuck up!"

36. Mr. Washington screamed out in agony saying "Ok, ok, ok!" He even exclaimed "Oh my God!" Mr. Washington immediately began crying as the voltage was sent through his body.



***Photo 3: Mr. Washington crying and begging as Officer Elmore deployed the taser into his back a second time. Mr. Washington was unarmed, handcuffed, and compliant when Officer Elmore deployed the taser the second time.***

37. As Mr. Washington laid on the vehicle and cried, Officer Elmore asked him, "Do you want it again? Shut the fuck up you was big and bad. Shut your bitch ass up."



***Photo 4: Taser holes burned into the back of Mr. Washington's shirt.***

### III.    Defendant Jody Elmore Arrives on the Scene.

38. After unlawfully and excessively tasing Mr. Washington, Officer Elmore called her husband, who was employed as a Deputy by the Pickens County Sheriff's Office, to the scene as backup.

39. Upon his arrival, Deputy Elmore asked, "Why didn't you wait on me Dana?"

40. After putting Mr. Washington in the back of the police car, Officer Elmore directed Deputy Elmore to detain S.W. Deputy Elmore unlawfully searched and seized S.W. He then handcuffed S.W., who was clearly shaken up, and sat him in the back of the police car.

41. Defendant Officers then ran to the aunt's home where Mr. Henry went for help. Defendant Officers beat on the door – even threatening to kick it down.

42. Mr. Henry voluntarily exited the home and surrendered himself. He was handcuffed and also put in the back of the police car.

**IV.    Mr. Washington's False Criminal Charges.**

43. Defendant Officers transported Mr. Washington to the Pickens County Detention Center.

44. Upon their arrival, Defendants were not sure what to charge Mr. Washington with. Upon information and belief, they instructed the Jail's staff not to book Mr. Washington at all while they conspired to decide what charges to book him on.

45. Mr. Washington sat in a visitation room where Defendant Officers taunted him about suing them.

46. Mr. Washington was finally booked into the Pickens County Detention Center at 1:05 pm.

47. Officer Elmore booked him on the following charges: 1) obstructing governmental operations, 2) resisting arrest, 3) marijuana possession, 4) ex-felon in possession of a firearm, and 5) drug trafficking fentanyl.

48. His bond was set at $505,000.00 – a bond set so high that neither him nor his family could afford.



**MICAH WASHINGTON**

**Booking #:** 5639
**Age:** 24
**Gender:** M
**Race:** B
**Address:** Tuscaloosa, 35405
**Arresting Agency:** PICKENS CO SO - AL0540000
**Booking Date:** 12-02-2023 - 1:05 pm
**Release Date:** 12-05-2023 - 11:52 am
**Charges:**
Obstructing Governmental Operations
Resisting Arrest
Marijuana-Possess
Ex-Felon in Possession of a Firearm
Drug Trafficking
**Bond:** $505,000.00

***Photo 5: The false criminal charges filed against Mr. Washington.***

49. According to the clearly false complaint signed by Officer Elmore, Mr. Washington did "By means of physical force, or interference, or by another independently unlawful act, intentionally obstructed, impaired or hindered the administration of law, or other governmental function, to-wit." The description of what Mr. Washington allegedly did to obstruct governmental operations was left blank.

50. According to the clearly false complaint signed by Officer Elmore, Mr. Washington did "On or about 12/02/2023 intentionally prevent, or attempt to prevent Investigator Elmore from affecting a lawful arrest of himself. . .."

51. According to the clearly false complaint signed by Officer Elmore, Mr. Washington did "On or about 12/02/2023 unlawfully possess marijuana for "other than personal use."

52. Finally, according to the clearly false complaint signed by Officer Elmore, Mr. Washington did "On or about 12/02/2023, while at or near CR 27 . . .knowingly

s[old], manufacture[d], deliver[ed], or knowingly h[ad] in actual or constructive possession. . .7 grams of cocaine and fentanyl."

53. The Pickens County District Attorney's Office dismissed the drug trafficking and ex-felon in possession of a firearm charges only two days later.[1]

54. Plaintiff never possessed fentanyl and is/was not a felon.

55. Upon information and belief, any drugs allegedly recovered from Mr. Washington and/or his vehicle were maliciously, intentionally, and purposely planted by Defendant Officers to justify his wrongful arrest.

56. After the obviously false charges were dismissed, Mr. Washington's bond was significantly lowered, and he was released from the Detention Center on December 5, 2023.

**V.    Mr. Henry's False Criminal Charges.**

57. Mr. Henry was also booked into the Pickens County Detention Center on false charges.

58. He was held in booking for several hours while Defendants conspired to decide what charges to book him on.

59. Officer Elmore finally booked him on the following charges: 1) resisting arrest, 2) attempting to elude, 3) marijuana possession, and 4) drug trafficking fentanyl.

---

[1] Mr. Washington wholly expects the remaining charges pending against him before the Circuit Court of Pickens County to be fully dismissed as well.

60. According to the clearly false complaint signed by Officer Elmore, Mr. Henry did "On or about 12/02/2023 intentionally prevent, or attempt to prevent Investigator Elmore from affecting a lawful arrest of himself. . .."

61. According to the clearly false complaint signed by Officer Elmore, Mr. Henry did "intentionally flee by any means from anyone he/she knew to be a law enforcement officer who was attempting to arrest him or her, to wit." The description of what Mr. Henry allegedly did to elude was left blank.

62. According to the clearly false complaint signed by Officer Elmore, Mr. Henry did "On or about 12/02/2023 unlawfully possess marijuana for "other than personal use."

63. Finally, according to the clearly false complaint signed by Officer Elmore, Mr. Henry did "On or about 12/02/2023, while at or near CR 27 . . .knowingly s[old], manufacture[d], deliver[ed], or knowingly h[ad] in actual or constructive possession. . .7 grams of cocaine and fentanyl."

64. The Pickens County District Attorney's Office dismissed the drug trafficking charge only two days later. After the obviously false charge was dismissed, Mr. Henry was released from the Detention Center on December 5, 2023.

65. Additionally, the Pickens County District Attorney's Office later moved to dismiss the remaining resisting arrest, attempting to elude, and possession of marijuana charges against Mr. Henry.

66. Upon information and belief, any drugs allegedly recovered from Mr. Henry and/or the vehicle were maliciously, intentionally, and purposely planted by Defendant Officers to justify his wrongful arrest.

## VI.  Plaintiffs' Damages.

67. As a result of Defendants' actions, Mr. Washington has suffered physically, mentally, financially, and emotionally, including, but not limited to, the following ways:

    a. Experiencing pain in his left side and back;

    b. Experiencing nightmares and trouble sleeping;

    c. Exhibiting signs consistent with post-traumatic stress disorder ("PTSD");

    d. Experiencing trouble finding jobs because of the false criminal charges;

    e. Incurring legal fees to defend against the false criminal charges;

    f. Humiliation and degradation; and

    g. Fear of law enforcement.

68. As a result of Defendants' actions, Mr. Henry has suffered physically, mentally, financially, and emotionally, including, but not limited to, the following ways:

    a. Exhibiting signs consistent with PTSD;

    b. Incurring legal fees to defend against the false criminal charges;

    c. Humiliation and degradation; and

    d. Fear of law enforcement.

69. As a result of Defendants' actions, S.W. has suffered physically, mentally, financially, and emotionally.

70. For example, on December 4, 2023, S.W. visited his doctor after having trouble sleeping. Records noted that S.W. witnessed Mr. Washington being tased by a "police woman that arrest him [and] tazed him multiple times and used foul language and was pretty rough with him. . .." The records further noted that S.W. "was present and witnessed all this, since then he has been worried about his brother and having trouble sleeping at night. . .."

71. S.W. was diagnosed with anxiety and prescribed medication.

## CAUSES OF ACTION

## FEDERAL CLAIMS

### COUNT I: VIOLATION OF 42 U.S.C. § 1983 – EXCESSIVE FORCE

72. Plaintiffs hereby adopt and re-allege paragraphs 1, 5, 8, 10-37, and 67 of this Complaint as if fully set forth herein.

73. This Count applies to Plaintiff Micah Washington and Defendant Officer Dana Elmore.

74. On December 2, 2023, Officer Elmore used unnecessary and excessive force against Mr. Washington when she carelessly, negligently, unskillfully, maliciously, and/or sadistically deployed a taser in his back two separate times.

15

75. At all times relevant to the first tasing, Mr. Washington was compliant with Officer Elmore's demands.

76. At all times relevant to the second tasing, Mr. Washington was unarmed, handcuffed behind his back, and remained compliant with Officer Elmore's commands.

77. At the time of the second tasing, Mr. Washington did not and could not pose a physical threat of harm to Officer Elmore or any other person.

78. Officer Elmore's use of force was objectively unreasonable in light of the circumstances and constituted a deprivation of Mr. Washington's constitutional rights.

79. As a result of Officer Elmore's unjustified and unconstitutional use of force, Mr. Washington suffered and continues to suffer physical injuries, loss of liberty, symptoms consistent with PTSD, mental anguish, humiliation, degradation, pain and suffering, and fear of law enforcement.

**COUNT II: VIOLATION OF 42 U.S.C. § 1983 –
UNREASONABLE SEARCH AND SEIZURE**

80. Plaintiffs hereby adopt and re-allege paragraphs 1, 5, 8, 10-37, and 67 of this Complaint as if fully set forth herein.

81. This Count applies to Plaintiff Micah Washington and Defendant Officer Dana Elmore.

82. On December 2, 2023, Mr. Washington, Mr. Henry, and S.W. stopped on the shoulder of a rural road in Pickens County to change a flat tire. When Officer Elmore approached them, she had no articulable reasonable suspicion or probable cause to believe that either of them had committed any crime.

83. Nevertheless, Officer Elmore unreasonably searched and seized Mr. Washington when she handcuffed him and deployed her taser in his back while he was unarmed, handcuffed, and compliant.

84. Such search and seizure were objectively unreasonable in light of the circumstances and constituted a deprivation of Mr. Washington's constitutional rights.

85. As a result of Officer Elmore's unjustified and unconstitutional search and seizure of Mr. Washington, he suffered and continues to suffer physical injuries, loss of liberty, symptoms consistent with PTSD, mental anguish, humiliation, degradation, pain and suffering, and fear of law enforcement.

## COUNT III: VIOLATION OF 42 U.S.C. § 1983 – UNREASONABLE SEARCH AND SEIZURE

86. Plaintiffs hereby adopt and re-allege paragraphs 2, 5-8, 10-26, 38-39, 41-42, and 68 of this Complaint as if fully set forth herein.

87. This Count applies to Plaintiff Jacorien Henry and Defendant Officers.

88. On December 2, 2023, Mr. Henry and the other Plaintiffs stopped on the shoulder of a rural road in Pickens County to change a flat tire. When Officer Elmore approached them, she had no articulable reasonable suspicion or probable cause to believe that either of them had committed any crime.

89. When Officer Elmore grew increasingly more aggressive with Mr. Washington, Mr. Henry ran to retrieve help. At that time, Mr. Henry had no reason to believe that he was under arrest, was detained, or was not otherwise free to leave.

90. Nevertheless, Defendants went to the nearby house and searched and seized Mr. Henry.

91. Mr. Henry had not committed any crime, as evidenced by the criminal charges being dismissed against him.

92. Such search and seizure were objectively unreasonable in light of the circumstances and constituted a deprivation of Mr. Henry's constitutional rights.

93. As a result of Defendants' unjustified and unconstitutional search and seizure of Mr. Henry, he suffered and continues to suffer loss of liberty, symptoms consistent with PTSD, mental anguish, humiliation, degradation, pain and suffering, and fear of law enforcement.

## COUNT IV: VIOLATION OF 42 U.S.C. § 1983 – UNREASONABLE SEARCH AND SEIZURE

94. Plaintiffs hereby adopt and re-allege paragraphs 5-8, 10-40, and 69-71 of this Complaint as if fully set forth herein.

95. This Count applies to Plaintiff Toris Howard, as Next of Kin for Minor S.W., and Defendant Officers.

96. On December 2, 2023, S.W. accompanied the other Plaintiffs on the shoulder of a rural road in Pickens County to change a flat tire. When Officer Elmore approached them, she had no articulable reasonable suspicion or probable cause to believe that either of them had committed any crime. However, after unlawfully tasing and handcuffing Mr. Washington, she called Deputy Elmore to the scene as "backup."

97. When Deputy Elmore arrived at the scene as "backup," he unlawfully handcuffed S.W. and put him in the back of the police car without justification.

98. Such search and seizure were objectively unreasonable in light of the circumstances and constituted a deprivation of S.W.'s constitutional rights.

99. As a result of Defendants' actions, S.W. had trouble sleeping, was diagnosed with anxiety, and prescribed medication.

## COUNT V: VIOLATION OF 42 U.S.C. § 1983 – MALICIOUS PROSECUTION

100. Plaintiffs hereby adopt and re-allege paragraphs 1, 5, 8, 10-37, 43-56, and 67 of this Complaint as if fully set forth herein.

101. This Count applies to Plaintiff Micah Washington and Defendant Officer Dana Elmore.

102.   As described more fully above, Officer Elmore, under the color of law and within the scope of her employment, maliciously signed a complaint accusing Mr. Washington of 1) obstructing governmental operations, 2) resisting arrest, 3) marijuana possession, 4) being an ex-felon in possession of a firearm, and 5) drug trafficking fentanyl.

103.   As a result of these malicious and baseless charges, Mr. Washington's bond was set at $505,000.00.

104.   Mr. Washington was not an ex-felon and did not possess fentanyl.[2]

105.   Almost immediately, those charges were dismissed in Mr. Washington's favor by the Pickens County District Attorney's Office.

106.   When the clearly false charges were dismissed in Mr. Washington's favor, his bond was significantly lowered, and he was able to bond out of the Detention Center.

107.   Officer Elmore exerted her influence to initiate, perpetuate, and bolster judicial proceedings against Mr. Washington without probable cause. Further, and upon information and belief, Defendant planted the drugs allegedly recovered at the scene to justify Mr. Washington's wrongful arrest.

---

[2]  Mr. Washington wholly expects the remaining charges pending against him before the Circuit Court of Pickens County to be fully dismissed as well.

108.   Officer Elmore's misconduct, in making blatantly false charges against Mr. Washington, was objectively unreasonable and was undertaken intentionally and/or in total disregard of his constitutional rights.

109.   As a result of Defendant's misconduct alleged in this Count, Mr. Washington suffered and continues to suffer loss of liberty, symptoms consistent with PTSD, mental anguish, humiliation, degradation, pain and suffering, fear of law enforcement, trouble finding work, and legal fees.

## COUNT VI: VIOLATION OF 42 U.S.C. § 1983 – MALICIOUS PROSECUTION

110.   Plaintiffs hereby adopt and re-allege paragraphs 2, 5, 8, 10-26, 38-39, 41-42, 57-66, and 68 of this Complaint as if fully set forth herein.

111.   This Count applies to Plaintiff Jacorien Henry and Defendant Officer Dana Elmore.

112.   As described more fully above, Officer Elmore, under the color of law and within the scope of her employment, maliciously signed a complaint accusing Mr. Henry of 1) resisting arrest, 2) attempting to elude, 3) marijuana possession, and 4) drug trafficking fentanyl.

113.   Almost immediately, the trafficking charge was dismissed in Mr. Henry's favor by the Pickens County District Attorney's Office.

114.   Additionally, the Pickens County District Attorney's Office later moved to dismiss the remaining resisting arrest, attempting to elude, and possession of marijuana charges against Mr. Henry.

115.   Officer Elmore exerted her influence to initiate, perpetuate, and bolster judicial proceedings against Mr. Henry without probable cause. Further, and upon information and belief, Defendant planted any drugs allegedly recovered at the scene to justify Mr. Henry's wrongful arrest.

116.   Officer Elmore's misconduct, in making blatantly false charges against Mr. Henry, was objectively unreasonable and was undertaken intentionally and/or in total disregard of his constitutional rights.

117.   As a result of Defendant's misconduct alleged in this Count, Mr. Henry suffered and continues to suffer loss of liberty, symptoms consistent with PTSD, mental anguish, humiliation, degradation, pain and suffering, fear of law enforcement, and legal fees.

### COUNT VII: VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE

118.   Plaintiffs hereby adopt and re-allege paragraphs 1, 5, 8, 10-37, and 67 of this Complaint as if fully set forth herein.

119.   This Count applies to Plaintiff Micah Washington and Defendant Officer Dana Elmore.

120.   On December 2, 2023, Officer Elmore stopped as the Plaintiffs were changing a flat tire in Pickens County, Alabama. The Plaintiffs had committed no crime to justify police involvement or interference.

121.   Nevertheless, Officer Elmore angrily demanded to see their identification. After Plaintiffs complied, and Mr. Washington questioned why it was necessary, Officer Elmore grew increasingly more aggressive.

122.   Officer Elmore then tased Mr. Washington without justification. Even more, after he was handcuffed and completely compliant, Officer Elmore tased and taunted him again.

123.   Officer Elmore knew or should have known that tasing a compliant and non-resistant person violated the constitution and posed a risk of serious bodily injury but wholly disregarded such risk.

124.   As a result of Defendant's misconduct alleged in this Count, Mr. Washington suffered and continues to suffer loss of liberty, symptoms consistent with PTSD, mental anguish, humiliation, degradation, pain and suffering, and fear of law enforcement.

## STATE CLAIMS

## COUNT VIII: MUNICIPAL LIABILITY

125.   Plaintiffs hereby adopt and re-allege paragraphs 1-5, 8-42, and 67-71 of this Complaint as if fully set forth herein.

126.  This count applies to all Plaintiffs and Defendant City.

127.  On December 2, 2023, Defendant Elmore, as an agent, employee, and/or officer of Defendant City, carried out her job duties in a neglectful, unskillful, and/or careless manner.

128.  As alleged more fully above, Officer Elmore neglectfully, unskillfully, and/or carelessly approached Plaintiffs on the shoulder of the road as they were changing a flat tire. Officer Elmore had no articulable reasonable suspicion or probable cause to believe that either of the Plaintiffs had committed any crime. Nevertheless, she demanded their identification.

129.  After the Plaintiffs complied, Officer Elmore neglectfully, unskillfully, and/or carelessly deployed her taser into Mr. Washington's back although he was unarmed, handcuffed, compliant, and posed no threat of harm to any person.

130.  After unlawfully tasing Mr. Washington, Officer Elmore neglectfully, unskillfully, and/or carelessly directed S.W. to be detained without justification.

131.  Finally, after unlawfully tasing Mr. Washington, Officer Elmore neglectfully, unskillfully, and/or carelessly arrested Mr. Henry without justification.

132.  As a result of the acts complained of in this Count, Plaintiffs suffered and continues to suffer physical injuries, loss of liberty, symptoms consistent with PTSD, mental anguish, humiliation, degradation, pain and suffering, and constant fear of law enforcement officials.

24

## COUNT IX: NEGLIGENCE

133.   Plaintiffs hereby adopt and re-allege paragraphs 1-3, 5-42, and 67-71 of this Complaint as if fully set forth herein.

134.   This Count applies to all Plaintiffs and Defendant Officers.

135.   Officer Elmore, in her capacity as a City of Reform Police Officer, owed Plaintiffs a duty to make lawful arrests and use only the force necessary to restore order, compel compliance, and/or to protect herself or others from a threat of harm.

136.   Deputy Elmore, in his capacity as a Sheriff's Deputy with the Pickens County Sheriff's Office, owed Plaintiffs a duty to make lawful arrests and use only the force necessary to restore order, compel compliance, and/or to protect himself or others from a threat of harm.

137.   On December 2, 2023, Officer Elmore breached her duty of care when she unlawfully deployed her taser into Mr. Washington's back although he was unarmed, handcuffed, compliant, and posed no threat of harm to her or any other person. She further breached her duty of care when she arrested Mr. Washington without probable cause.

138.   On December 2, 2023, Defendant Officers breached their duty of care when they unlawfully arrested Mr. Henry without probable cause.

139.   On December 2, 2023, Officer Elmore breached her duty of care when she directed Deputy Elmore to detain S.W. without reasonable suspicion. Deputy Elmore breached his duty of care by detaining S.W.

140.   As a direct result of Defendants' negligence, Plaintiffs suffered and continues to suffer physical injuries, loss of liberty, symptoms consistent with PTSD, mental anguish, humiliation, degradation, pain and suffering, and fear of law enforcement officials.

## COUNT X: WANTONNESS

141.   Plaintiffs hereby adopt and re-allege paragraphs 1, 5, 8-37, 43-56, and 67 of this Complaint as if fully set forth herein.

142.   This Count applies to Plaintiff Micah Washington and Defendant Officer Dana Elmore.

143.   On December 2, 2023, Officer Elmore, with reckless indifference to Mr. Washington's safety and well-being, deployed her taser into Mr. Washington's back although he was compliant with her commands.

144.   Additionally, with further reckless indifference to Mr. Washington's safety and well-being, Officer Elmore deployed her taser into his back a second time although he was unarmed, handcuffed, compliant, and posed no threat of harm to her or any other person.

145.   Officer Elmore knew or should have known that such actions would likely result in serious harm, and even death, to Mr. Washington. Nevertheless, Officer Elmore wholly disregarded such risk as she tased and taunted him on camera.

146.   Further, after tasing Mr. Washington without justification, Officer Elmore initiated and perpetuated false criminal charges against him.

147.   As a direct result of Defendant's wantonness, Mr. Washington suffered and continues to suffer physical injuries, loss of liberty, symptoms consistent with PTSD, mental anguish, humiliation, degradation, pain and suffering, fear of law enforcement officials, and legal fees.

## COUNT XI: ASSAULT AND BATTERY

148.   Plaintiffs hereby adopt and re-allege paragraphs 1, 5, 8-37, and 67 of this Complaint as if fully set forth herein.

149.   This count applies to Plaintiff Micah Washington and Defendant Officer Dana Elmore.

150.   On December 2, 2023, Officer Elmore sadistically and maliciously assaulted and battered Mr. Washington when she tased him in his back although he was unarmed, handcuffed, compliant, and posed no threat of harm to her or any other person.

151.   Officer Elmore knew or should have known that her actions were known to carry severe risks to Mr. Washington's safety and well-being, but she wholly disregarded such risks.

152.   As a result of Officer Elmore's assault and battery, Mr. Washington suffered and continues to suffer physical injuries, loss of liberty, symptoms consistent with PTSD, mental anguish, humiliation, degradation, pain and suffering, and fear of law enforcement officials.

## COUNT XII: FALSE IMPRISONMENT

153.   Plaintiffs hereby adopt and re-allege paragraphs 1, 5, 8-37, 43-56, and 67 of this Complaint as if fully set forth herein.

154.   This Count applies to Plaintiff Micah Washington and Defendant Officer Dana Elmore.

155.   On December 2, 2023, Officer Elmore physically and unlawfully deprived Mr. Washington of his freedom.

156.   More specifically, Officer Elmore wrongfully and excessively tased and arrested Mr. Washington without justification. She also intentionally and maliciously bolstered and fabricated the subsequent criminal charges against him.

157.   As a result of the bolstered and false charges Officer Elmore initiated against him, Mr. Washington's bond was set at $505,000.00 – a bond that neither him nor his family could afford.

158.   As a result, Mr. Washington was booked and held in the Pickens County Detention Center for approximately three days until the clearly false criminal charges were dismissed and his bond was lowered.[3]

159.   At all times relevant, Mr. Washington reiterated that he had done nothing wrong and that the arrest was wrongful.

160.   As a result of Officer Elmore's actions, Mr. Washington suffered and continues to suffer physical injuries, loss of liberty, symptoms consistent with PTSD, mental anguish, humiliation, degradation, pain and suffering, and fear of law enforcement officials.

## COUNT XIII: FALSE IMPRISONMENT

161.   Plaintiffs hereby adopt and re-allege paragraphs 2, 5-26, 38-39, 41-42, 57-66, and 68 of this Complaint as if fully set forth herein.

162.   This Count applies to Mr. Henry and Defendant Officers.

163.   On December 2, 2023, Defendant Officers physically and unlawfully deprived Mr. Henry of his freedom.

---

[3] Mr. Washington wholly expects the remaining charges pending against him before the Circuit Court of Pickens County to be fully dismissed as well.

164.    After Officer Elmore unlawfully and excessively tased Mr. Washington, Mr. Henry went to the nearby home for help. He reasonably believed Officer Elmore would seriously injure or kill Mr. Washington.

165.    Mr. Henry was not told that he was under arrest, being detained, or was otherwise not free to leave the scene.

166.    Nevertheless, after Mr. Washington was unlawfully arrested, Defendant Officers then unlawfully arrested Mr. Henry.

167.    Mr. Henry was booked into the Detention Center with bolstered and fabricated criminal charges against him. He was released from the Detention Center after being held for approximately three days until the clearly false criminal charges were dismissed against him and his bond was lowered. As further evidence of Mr. Henry being falsely imprisoned, the remaining criminal charges have been dismissed against him as well.

168.    At all times relevant, Mr. Henry reiterated that he had done nothing wrong and that the arrest was wrongful.

169.    As a result of Defendants' actions, Mr. Henry suffered and continues to suffer physical injuries, loss of liberty, symptoms consistent with PTSD, mental anguish, humiliation, degradation, pain and suffering, and fear of law enforcement officials.

## COUNT XIV: FALSE IMPRISONMENT

170.   Plaintiffs hereby adopt and re-allege paragraphs 3, 5-10, 38-40, and 69-71 of this Complaint as if fully set forth herein.

171.   This Count applies to Plaintiff Toris Howard, as Next of Kin for Minor S.W., and Defendant Officers.

172.   On December 2, 2023, Deputy Elmore, at the direction of Officer Elmore, searched, seized, and detained S.W. in the back of his patrol unit.

173.   S.W. was personally deprived of his freedom as he sat in the back of the police car and was not otherwise free to leave.

174.   S.W. had not committed any crime, and Defendants had no articulable reasonable suspicion, to justify S.W.'s detainment.

175.   As a result of Defendants' actions, S.W. had trouble sleeping, was diagnosed with anxiety, and prescribed medication.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully request this Honorable Court enter a judgment in their favor and against Defendants, jointly and severally, for the following relief:

a. Compensatory damages for emotional distress, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages in an amount of twenty million ($20,000,000.00) dollars;

31

b.  Punitive damages in an amount to be determined by a jury;

c.  Reasonable attorney's fees and costs pursuant to 42 U.S.C § 1988;

d.  Litigation expenses, costs, and pre-judgment and post-judgment interest at the maximum daily interest rate allowable by law; and

e.  All other and further monetary and/or equitable relief as this Honorable Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Submitted on this 27th day of January 2025.

Respectfully submitted,

*/s/ Leroy Maxwell, Jr.*
Leroy Maxwell, Jr.
Kristen E. Gochett

*Attorneys for Plaintiff*

**OF COUNSEL:**
**Maxwell & Tillman**
1820 3rd Avenue North, Suite 300
Birmingham, AL 35203
Phone: (205) 216-3304
Fax: (205) 409-4145
maxwell@mxlawfirm.com
kgochett@mxlawfirm.com

*/s/ Richard Rice*
Richard Rice

*Attorney for Plaintiff*

**OF COUNSEL:**
**The Rice Firm, LLC**
420 20th Street North, Suite 2200
Birmingham, AL 35203
Phone: (205) 618-8733
rice@rice-lawfirm.com

## DEFENDANTS SERVED AT THE FOLLOWING ADDRESSES:

**City of Reform**
**Attn: City Clerk**
3rd Avenue SE
Reform, AL 35481

**Dana Elmore**
Served via Process Server

**Jody Elmore**
Served via Process Server

*/s/ Leroy Maxwell, Jr.*
OF COUNSEL