FILED

2026 Mar-25  PM 01:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| **MICAH WASHINGTON, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  7:25-cv-138-ACA** |
| | } | |
| **CITY OF REFORM, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

Plaintiffs Micah Washington, Jacorien Henry, and Shikeem Washington were changing a tire on the side of the road when Defendant Officer Dana Elmore, a police officer with the City of Reform, pulled behind the trio. Officer Elmore immediately ordered Micah[1] to produce identification. Although he complied, Officer Elmore tased Micah, handcuffed him, and tased him again. While Mr. Henry ran to a nearby relative's home, Shikeem video recorded the encounter. Officer Elmore then called her husband, Defendant Pickens County Deputy Sheriff Jody Elmore, for back up. When Deputy Elmore arrived, he detained Shikeem. Both Elmores called for backup, and they all went to the nearby home to arrest Mr. Henry. Officer Elmore

---

[1] The court refers to Micah Washington and Shikeem Washington by their first names to avoid confusion.

and Deputy Elmore later took Micah and Mr. Henry to the Pickens County Detention Center and charged each with several crimes.

Micah, Mr. Henry, and Shikeem now bring state and federal claims against Officer Elmore, Deputy Elmore, and the City of Reform. In total, the three plaintiffs assert seven federal claims against Officer Elmore: a Fourth Amendment excessive force violation ("Count One"); Fourth Amendment unlawful search and seizure violations brought by Micah, Mr. Henry, and Shikeem ("Count Two," "Count Three," and "Count Four," respectively); malicious prosecution brought by Micah and Mr. Henry ("Count Five" and "Count Six," respectively); deliberate indifference brought by Micah ("Count Seven"). They also bring six state law claims: negligence ("Count Ten"); wantonness ("Count Eleven"); assault and battery ("Count Twelve"); false imprisonment brought by Micah, Mr. Henry, and Shikeem ("Count Thirteen," "Count Fourteen," and "Count Fifteen," respectively).

This memorandum opinion addresses only Officer Elmore's motion to dismiss the claims against her in her individual capacity. (Doc. 27). That motion moves to dismiss Counts One, Three, Five, Six, Seven, Ten, Fourteen, and Fifteen in their entirety. It also seeks to dismiss the unreasonable search claim in Count Two and the unreasonable seizure claim in Count Four.

For the reasons below, the court **WILL GRANT IN PART** and **DENY IN PART** Officer Elmore's motion to dismiss. (Doc. 27). The court **WILL GRANT**

2

the motion and **WILL DISMISS WITHOUT PREJUDICE** Count Three, Count Four with respect to the unreasonable seizure claim, Count Five, Count Seven, and Count Ten with respect to Mr. Henry's claims. The court **WILL DENY** the motion in all other respects.

## I.    BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

In December 2023, Micah and Mr. Henry were driving to Micah's aunt's home when the duo pulled over to change a flat tire. (Doc. 21 ¶¶ 11–12). Micah's brother, Shikeem, was at the nearby home and came to help the pair. (*Id.* ¶ 13). As the three men changed the tire, Officer Elmore stopped behind them and approached the car. (*Id.* ¶¶ 13–14). Although the men believed she stopped to help them, Officer Elmore approached "angrily" and requested identification. (*Id.* ¶¶ 14–15). Micah questioned why Officer Elmore needed identification but nevertheless complied. (Doc. 21 ¶¶ 16–17). Officer Elmore instructed Micah to stand next to her car, which Micah again questioned. (*Id.* ¶ 18).

Micah then started to film the encounter. (*Id.* ¶ 19). Officer Elmore objected to Micah filming. (*Id.* ¶ 20). She then tased him for "several seconds" and ordered him to get on the ground. (Doc. 21 ¶ 20). Micah complied and pleaded for her to

stop, telling her that the pair had been changing a tire. (*Id.* ¶¶ 21–22). Officer Elmore then "mocked" Micah and told him to "shut the fuck up or she would tase him again." (*Id.* ¶¶ 23–24). Micah asked Mr. Henry to get help, so Mr. Henry ran to the nearby home. (*Id.* ¶¶ 25–26). Officer Elmore never told Mr. Henry he was under arrest or that he could not leave. (Doc. 21 ¶ 26).

Around the same time, Shikeem began filming. (*Id.* ¶ 27). As he videoed, Officer Elmore handcuffed Micah. (*Id.* ¶ 28). She then demanded Micah stand up and laid him on the hood of her vehicle. (*Id.* ¶¶ 29–30). Throughout the interaction, Micah complied with Officer Elmore's commands and did not resist. (Doc. 21 ¶¶ 29–31). Micah told Officer Elmore that he lawfully owned a gun, and it was on his person. (*Id.* ¶ 32). Officer Elmore then removed the gun and placed it out of his reach. (*Id.* ¶ 33). After removing the gun, Officer Elmore tased Micah again. (*Id.* ¶¶ 34–35).

Officer Elmore called Deputy Elmore for back up. (*Id.* ¶ 38). While waiting for him, Officer Elmore searched Shikeem. (*Id.* ¶¶ 38–39). When Deputy Elmore arrived, Officer Elmore told him that she had searched Shikeem, but Deputy Elmore nonetheless searched Shikeem again. (*Id.* ¶¶ 40–41). Deputy Elmore then handcuffed Shikeem, told him that he was detained, and placed Shikeem in the police car for twenty minutes. (*Id.* ¶¶ 43–44). Like Micah, Shikeem remained compliant. (Doc. 21 ¶ 42). The two officers then called for backup. (*Id.* ¶ 45). When the

4

additional officers arrived, Deputy Elmore moved Shikeem from one police car to another. (*Id.* ¶ 46). Shikeem remained in that car for twenty additional minutes. (*Id.*).

Officer Elmore, Deputy Elmore, and the additional officers then turned their attention to Mr. Henry. (*See* doc. 21 ¶ 47). Officer Elmore, Deputy Elmore, and the additional officers went to the nearby home and "beat and kick[ed] on the front door." (*Id.*). Mr. Henry exited the home, where all the officers stood with their guns drawn. (*Id.* ¶¶ 48–49). One unidentified officer grabbed Mr. Henry and searched his pockets. (*Id.* ¶ 49). Deputy Elmore handcuffed Mr. Henry and put him in a police car. (Doc. 21 ¶ 50).

Officer Elmore and Deputy Elmore then transported Micah and Mr. Henry to the Pickens County Detention Center. (*Id.* ¶¶ 51–52). Deputy Elmore and Officer Elmore waited to formally charge Micah until they discussed their options. (*Id.* ¶¶ 53–54). Eventually, Officer Elmore filed a criminal complaint containing false information and alleging probable cause that Micah obstructed government operations, resisted arrest, possessed marijuana, was a felon in possession of a firearm, and drug trafficked fentanyl. (*Id.* ¶¶ 56, 58–61, 63–64). Officer Elmore also filed a criminal complaint containing false information and alleging probable cause that Mr. Henry resisted arrest, attempted to elude, possessed marijuana, and drug trafficked fentanyl. hours. (Doc. 21 ¶¶ 66–67, 68). The Pickens County District

Attorney dismissed the drug trafficking and felon in possession charges two days later. (*Id.* ¶ 62).

Two days later, the Pickens County District Attorney dismissed the drug trafficking charge, and officials released Mr. Henry from custody. (*Id.* ¶ 73). The District Attorney eventually dropped all charges against Mr. Henry. (*Id.* ¶ 74).

## II.    DISCUSSION

"To survive a motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In analyzing the sufficiency of the complaint," the court considers "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544.

Officer Elmore argues that Counts One, Five, and Six fail to state a claim for relief and that she is entitled to qualified immunity on all other remaining federal claims. (Doc. 28 at 7–22). Officer Elmore further contends that the plaintiffs failed to plausibly allege state law claims against her and that she is entitled to state-agent

6

immunity on each state law claim that she moves to dismiss. (*Id.* at 22–31). The court will address the federal claims first.

1.  Federal Claims

Officer Elmore maintains that Count One fails to state a separate claim for relief and that Counts Five and Six fail to state a claim upon which relief may be granted. She asserts qualified immunity on Counts Two through Six. Micah concedes that Count Seven is due to be dismissed (doc. 42 at 11), so the court **WILL GRANT** Officer Elmore's motion and **WILL DISMISS** Count Seven. Finally, none of the plaintiffs made claims under the Fourteenth Amendment, so the court will not address Officer Elmore's motion to dismiss any Fourteenth Amendment claims. (Doc. 42 at 9-11).

a.  Count One

Officer Elmore contends Count One is "subsumed within" Count Two. (Doc. 28 at 9–10). The court disagrees. "Fourth Amendment claims for . . . unlawful arrest or detention [] and excessive force are separate claims that focus on different points in a law enforcement officer's interaction with the plaintiff." *Dukes v. Sheriff of Levy Cnty.*, 155 F.4th 1291, 1300–01 (11th Cir. 2025). The claims collapse into each other when "the plaintiff alleges only . . . that the force used was unjustified because the officer had no basis to make an arrest at all. . . ." *Id.* at 1300. But when a plaintiff asserts that the officer used excessive force independent of whether the arrest or

7

seizure had the required level of suspicion, the claim for excessive force is independent of the illegal seizure claim. *Id*.

Here, Micah's excessive force claim is independent of his illegal seizure claim. He asserts that even if Officer Elmore legally seized and arrested him, she used excessive force by tasing him when he complied with her commands. (Doc. 21 ¶¶ 84–99; *see also* doc. 42 at 10–11). Micah never alleges Officer Elmore's force was excessive *only* because she unlawfully arrested him. *See Jackson v. Sauls*, 206 F.3d 1156, 1170–71 (11th Cir. 2000). Because Count One and Count Two are premised on independent causes of action, the court **WILL DENY** Officer Elmore's motion to dismiss Count One.

### b. *Counts Two through Four*

Officer Elmore asserts she is entitled to qualified immunity on Counts Two through Four. (Doc. 28 at 14–17). Qualified immunity protects all government officials except those who are plainly incompetent or knowingly violate federal law from the duty of defending their actions and liability. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "So long as a government official acts within the scope of his discretionary authority and does not violate clearly established law, the doctrine of qualified immunity protects him." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

A government official who asserts qualified immunity bears the initial burden of "proving that [she] was acting within [her discretionary] authority." *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). Officer Elmore satisfies this burden by establishing that plaintiff's alleged constitutional injury occurred while she was: (1) doing the type of action that fell within her general job responsibilities; and (2) within the scope of her authority. *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017); *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265–66 (11th Cir. 2004); *see also Donald v. Norris*, 131 F.4th 1255, 1264 (11th Cir. 2025).

To satisfy the first prong, Officer Elmore does not have to establish that she committed the act for a constitutional purpose, in a constitutional manner, to a constitutional extent, or under constitutionally appropriate circumstances. *Holloman*, 370 F.3d at 1266. Nor does Officer Elmore have to establish that she was specifically authorized to do the exact thing she was doing at the time the injury allegedly occurred. *See id.* So long as she was doing something that, if done for a proper purpose, "would be within, or reasonably related to, the outer perimeter" of her discretionary duties, she sustains her burden for that prong. *Donald*, 131 F.4th at 1264 (quotation marks omitted).

9

To satisfy the second, she need only establish that the State of Alabama authorized her to perform the duty. *Cummings,* 906 F.3d at 940; *see also Harbert Int'l*, 157 F.3d at 1283; *Lenz v. Wibburn,* 51 F.3d 1540, 154647 (11th Cir. 1995).

Officer Elmore has not satisfied her burden of production here. This court's initial order clearly states that it will not consider substantive arguments made in footnotes. (Doc. 2 at 15); *see also Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 681 (11th Cir. 2014) ("A party fails to adequately brief a claim when [she] does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims.") (quotation marks omitted). Officer Elmore attempts to establish that she acted within her discretionary functions in a footnote. Although Officer Elmore's burden is low, establishing that she acted within her discretionary authority is a substantive argument—not an afterthought or aside. Because Officer Elmore's brief violates the initial order, it will not be considered.[2]

Although Officer Elmore is not entitled to qualified immunity at this stage of the proceedings, her memorandum in support of her motion contends that Micah, Mr. Henry, and Shikeem did not plausibly allege constitutional violations—an element of a claim under § 1983. (Doc. 28 at 15 (arguing the "complaint . . . does

---

[2] Even if the court did consider her footnote, Officer Elmore did not establish she was acting within the discretionary authority authorized by the State of Alabama. (*Compare* doc. 28 at 11 n.3, *with* doc. 37 at 8–10). Her footnote relies entirely on allegations from the amended complaint that state she "acted under color of law," but the actions she took were "acting as law enforcement officer pursuant to the customs, policies, and practices of the City of Reform." (Doc. 28 at 11 n.3; *see* doc. 21 ¶ 86).

not satisfy the *Twombly/Iqbal* standard); *id.* at 16–17 (arguing the plaintiffs failed to plead a constitutional violation)). And the plaintiffs responded to this argument. (*See* doc. 42 at 16–18). The court therefore construes Officer Elmore's motion to dismiss as arguing separately what she argues within her qualified immunity analysis, which includes whether Micah, Mr. Henry, and Shikeem failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). For the reasons below, the court **WILL DENY** Officer Elmore's motion as to Count Two and **WILL GRANT** the motion as to Counts Three and Four.

### i.        Count Two: Unreasonable Search

Micah asserts that Officer Elmore unreasonably searched and seized him in Count Two of the amended complaint. (Doc. 21 at 19 ¶¶ 93–99). Officer Elmore moves to dismiss only the unreasonable search claim because the complaint is "void of any allegations of fact which plausibly establish that Officer Elmore also searched [Micah]." (Doc. 28 at 15) (emphasis in original).  The court disagrees.

Micah's amended complaint plausibly alleges that Officer Elmore "had no articulable reasonable suspicion or probable cause to believe that a crime had been committed" before she seized him. (Doc 21 at 19 ¶ 96; *see also* ¶ 93 (incorporating ¶¶ 10–37 by reference). Micah also alleged that he told Officer Elmore he had a gun on him after he was seized and Officer Elmore "removed his lawfully owned gun from his person." (Doc. 42 at 17 (citing doc. 21 ¶¶ 20, 28–33, 36)). These allegations

create a reasonable inference that Officer Elmore had to pat down Micah or reach into his pockets to seize the gun.  Either way, it's a search. *See Map v. Ohio*, 392 U.S. 1, 24–26 (1968). Accordingly, the court **WILL DENY** Officer's Elmore's motion as to Count Two.

### ii. Count Three: Unreasonable Search and Seizure

Officer Elmore maintains that Count Three does not plausibly allege that she searched or seized Mr. Henry. (Doc. 28 at 16). She is correct. Count Three identifies a group of officers that includes Officer Elmore and alleges that one of that group seized and searched Mr. Henry. (Doc. 21 ¶¶ 45, 47, 49). In the absence of a plausible allegation that *Officer Elmore* engaged in constitutionally infirm conduct, the count fails to state a claim. *See Ashcroft*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." (quotation marks omitted)). So, the court **WILL GRANT** Officer Elmore's motion with respect to Count Three.

### iii. Count Four: Unreasonable Seizure

Officer Elmore moves to dismiss the unreasonable seizure claim in Count Four because the amended complaint alleges that Deputy Elmore—not Officer Elmore—seized Shikeem.  (Doc. 28 at 16). Shikeem responds that Officer Elmore's participated in Shikeem's seizure by directing Deputy Elmore to detain Shikeem.

(Doc. 42 at 18 (citing doc. 21 ¶ 41)). Shikeem fails to offer any support for his contention that directing another person to seize an individual is itself a constitutional violation. (*See id.*). The court therefore **WILL GRANT** the motion with respect to the seizure of Shikeem.

### c.  Counts Five and Six

Counts Five and Six of the amended complaint alleges that Officer Elmore maliciously prosecuted Micah (Count Five) and Mr. Henry (Count Six). (Doc. 21 at 23–25 ¶¶ 117–134). To succeed on their malicious prosecution claims, Micah and Mr. Henry must each establish that the legal process justifying their seizure was constitutionally infirm and their seizures would not otherwise be justified without that legal process. *Williams v. Aguirre*, 965 F.3d 1147, 1166 (2020).

To plead a malicious prosecution claim, Micah and Mr. Henry must allege "(1) the plaintiff was seized under legal process; (2) the legal process justifying the plaintiff's seizure was constitutionally infirm; (3) the suit or proceeding terminated in the plaintiff's favor; and (4) the seizure would not otherwise be justified without legal process." *Gervin v. Florence*, 139 F.4th 1236, 1248 (11th Cir. 2025). The relevant issue in a claim for malicious prosecution is "whether the seizure was justified, not whether the prosecution itself was justified." *Laskar v. Hurd*, 972 F.3d 1278, 1292 (11th Cir. 2020).

Officer Elmore argues that Micah and Mr. Henry did not sufficiently plead that they were seized pursuant to legal process. The court disagrees. Although an initial warrantless arrest does not give rise to a malicious prosecution claim, a continued seizure after a subsequent probable cause hearing does. *Williams v. Aguirre*, 965 F.3d 1147, 1158, 1165–66 (11th Cir. 2020); *see Aguirre v. Seminole Cnty.*, 158 F.4th 1276, 1031 (11th Cir. 2025) ("Malicious prosecution therefore extends to seizures based on warrants or seizures following an arraignment, indictment, or probable-cause hearing.").

In Alabama, after a warrantless arrest, a judge or magistrate must generally make a probable cause determination within forty-eight hours. Ala. R. Crim. P. 4.3(a)(1)(iii); *see Williams*, 965 F.3d at 1164. Here, the duo allege that they were detained for longer than forty-eight hours, Officer Elmore filed a false criminal complaint, and bond was set. (Doc. 21 ¶¶ 58–66). Mr. Henry and Micah also incorporate by reference the criminal complaint. (*Id.* ¶¶ 58–61, 70–72; doc. 42-2).[3] Based on the foregoing, there is a reasonable inference that there was a judicial determination of probable cause after the initial warrantless seizure. Thus, both were seized pursuant to legal process.

---

[3] The complaint incorporates the criminal complaints against both Micah and Mr. Henry by reference because it is "central to the plaintiff's claim," and Officer Elmore does not dispute its authenticity. (Doc. 52 at 8–10); *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

Officer Elmore also argues Micah cannot assert a malicious prosecution claim because charges remain pending. (Doc. 28 at 21–22). She is correct. The favorable-termination element of a malicious prosecution claim prohibits a plaintiff from suing until the entire prosecution ends. *Laskar*, 972 F.3d at 1292–93 (noting that at common law "plaintiffs could not prevail when the prosecutions against them remained pending"). Thus, to state a claim, a plaintiff must show that "prosecution against him *formally ended* in a manner not inconsistent with his innocence on at least one charge that authorized his confinement." *Id.* at 1293 (emphasis added); *Thompson v. Clark*, 596 U.S. 36, 39 (2022) ("To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction.").

Micah argues his claim accrued with respect to the two dismissed charges. (Doc. 42 at 25). But the entire prosecution must end because allowing piecemeal litigation on a claim-by-claim basis cuts against the purpose of the favorable-termination requirement. *See Thompson*, 596 U.S. at 44; *see also Laskar*, 972 F.3d at 1292–93. Because Mich's entire prosecution has not ended, the court **WILL GRANT** Officer Elmore's motion on Count Five. The court **WILL DENY** the motion with respect to Count Six.

15

### 2. State Claims

Micah, Mr. Henry, and Shikeem each bring state law claims against Officer Elmore. Micah alleges that Officer Elmore negligently and wantonly tased and arrested him (Counts Ten and Eleven), assaulted and battered him (Count Twelve), and falsely imprisoned him (Count Thirteen). Mr. Henry (Counts Ten and Fourteen) and Shikeem (Counts Ten and Fifteen) bring claims against Officer Elmore for negligence and false imprisonment. Officer Elmore does not move to dismiss Counts Eleven, Twelve, or Thirteen, so the court does not discuss them. The court addresses the remaining state law claims in turn.

#### a. Count Ten

Count Ten alleges Officer Elmore was negligent by breaching her duty to make lawful searches and seizures and to only use necessary force. (Doc. 21 ¶ 162). The plaintiffs contend Officer Elmore breached her duty in four ways: (1) tasing Micah when he remained compliant (*id.* ¶ 163); (2) arresting Micah without articulable probable cause (*id.*); (3) unreasonably searching and seizing Mr. Henry (*id.* ¶ 164); and (4) searching Shikeem and then instructing Deputy Elmore to search Shikeem without articulable reasonable suspicion (*id.* ¶ 165).

Officer Elmore maintains that Mr. Henry's claims and Shikeem's claim arising from his detention are due to be dismissed because neither Mr. Henry nor Shikeem sufficiently allege a breach of a duty. (Doc. 28 at 22–23). For purposes of her motion,

16

Officer Elmore does not address whether she owed the plaintiffs a duty and argues only that she did not breach any duty to the plaintiffs. (*Id.*). Accordingly, the court limits its discussion to whether the plaintiffs sufficiently alleged a breach of a duty.

Mr. Henry objects to Officer Elmore's contention, pointing to his allegation that "[o]ne of the officers grabbed" and searched him when he exited the home. (Doc. 21 ¶ 49). But multiple officers were at the scene at the time of the search (*id*. ¶¶ 47, 49), and Mr. Henry admits that he does not know which of the officers searched his pocket (doc. 42 at 6 n.1, 17 n.2). Because several officers were present and there are no factual allegations connecting Officer Elmore to the search, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" by Officer Elmore. *Iqbal*, 556 U.S. at 679. Mr. Henry did not sufficiently plead that Officer Elmore searched him.

Second, Officer Elmore argues that Mr. Henry failed to plead that she seized him. To resist this conclusion, Mr. Henry argues that he pleaded Officer Elmore "breached [her] duty of care when [she] unlawfully searched, seized, and arrested Mr. Henry without articulable probable cause." (Doc. 21 ¶ 164; doc. 42 at 28). However, this conclusory allegation is not sufficient to establish Officer Elmore seized him. *See Iqbal*, 556 U.S. at 678–79. The other allegations show that Deputy Elmore handcuffed and placed Mr. Henry in a police car. (Doc. 21 ¶ 50–51).

Accordingly, Mr. Henry did not sufficiently allege Officer Elmore breached her duty by seizing him.

Third, Officer Elmore moves to dismiss Count Ten to the extent that it alleges that Officer Elmore detained Shikeem. (Doc. 28 at 23). But the complaint alleges that Officer Elmore was negligent when she searched Shikeem and directed Deputy Elmore to detain Shikeem—not that she detained Shikeem. (Doc. 21 ¶ 165). Officer Elmore did not move to dismiss the claim that she negligently directed Deputy Elmore to seize Shikeem. (*See* doc. 28 at 22–23). Because she did not argue the court should dismiss the claim based on her instructions to Deputy Elmore, the court **WILL DENY** her motion in this respect.

The court **WILL GRANT** Officer Elmore's motion to dismiss Count Ten with respect to Mr. Henry's claims. Accordingly, Count Ten will proceed with respect to Micah's and Shikeem's claims under Count Ten.

### b. Counts Fourteen and Fifteen

Officer Elmore argues that because she did not physically handcuff or detain Shikeem or Mr. Henry, she cannot be liable to them for false imprisonment. (Doc. 28 at 23–25). Alabama law says otherwise. False imprisonment is "the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170. And "persons other than those who actually effect an arrest or imprisonment may be so involved with or related to the

act or proceeding as instigators or participants therein as to be liable for false imprisonment." *Crown Cent. Petroleum Corp. v. Williams*, 679 So. 2d 651, 654 (Ala. 1996). Officer Elmore initiated the roadside encounter and directed Deputy Elmore to detain Shikeem. (Doc. 21 ¶¶ 14, 41). She also pointed a gun at Mr. Henry, ordered him to surrender, and charged him with crimes. (*Id.* ¶¶ 47–49, 66–75); *see Heining v. Abernathy*, 295 So. 3d 1032, 1037 (Ala. 2019) ("A false arrest will support a claim of false imprisonment."). Thus, she can be liable under both counts; the court **WILL DENY** the motion to dismiss Counts Fourteen and Fifteen.

### a. State-agent Immunity

Officer Elmore contends she is entitled to state-agent immunity for Counts Ten, Fourteen, and Fifteen as they relate to Shikeem and Mr. Henry. (Doc. 28 at 25–31). Peace officers are immune from civil liability in the officer's individual capacity when the officer is performing law enforcement duties and exercising discretion. *Ex parte City of Warrior*, 369 So. 3d 116, 120 (Ala. 2022); Ala. Code § 6-5-338.[4] There are two exceptions to the immunity: (1) the officer acts contrary to state or federal law or (2) the officer acts "willfully, maliciously, fraudulently, in bad faith, beyond

---

[4] Alabama has since changed this framework and passed a new statute that governs immunity for law enforcement officers. *See* Ala. Code § 6-5-388.2. But that new framework applies only to "any cause of action that accrued on or after October 1, 2025." Ala. Code § 6-5-338.4(a).

his or her authority, or under a mistaken interpretation of the law." *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).

A motion to dismiss "is typically not the appropriate vehicle by which to assert" state-agent immunity, and it is "rare" that a motion to dismiss based on state-agent immunity should be granted. *Johnson v. Reddoch*, 198 So. 3d 497, 507 (Ala. 2015) (quotation marks omitted); *see also Odom v. Helms*, 314 So. 3d 220, 229 n.3 (Ala. 2020) (noting that "in pleading a claim against a State agent, a plaintiff's initial burden is merely to state a cause of action against the defendant [and] need not anticipate a State-agent-immunity defense by pleading with particularity a *Cranman* exception").

For Count Ten, the only remaining claim from Mr. Henry and Shikeem is that Officer Elmore negligently directed Deputy Elmore to detain Shikeem. Specifically, the complaint outlines that Officer Elmore arrived on scene when the trio were changing a tire, all three individuals—including Shikeem—remained compliant to her commands, none of the three were committing a crime, and Officer Elmore did not have any other reason to order Deputy Elmore to detain Shikeem. (Doc. 21 ¶¶ 11–15, 27, 38–46). Taking these factual allegations in the light most favorable to Shikeem, his "complaint on its face simply does not establish beyond a doubt that [Officer Elmore is] entitled to State-agent immunity." *Harris v. Hicks*, 374 So. 3d 676, 682 (Ala. 2022).

Turning to Mr. Henry and Shikeem's claims for false imprisonment, both individuals allege sufficient facts to show constitutional violations or that Officer Elmore acted willfully. Mr. Henry alleges that Officer Elmore planted drugs, pointed a gun at him, and falsified criminal charges. (Doc. 21 ¶¶ 47–51, 66–75). Shikeem alleges that she searched his pockets despite no arrest or evidence of a crime and instructed Deputy Elmore to detain him after finding no evidence of a crime during the search. (*Id.* ¶¶ 38–47). These are specific factual allegations—not legal conclusions as Officer Elmore argues—that indicate Officer Elmore's conduct could fall within an exception to state-agent immunity. *See, e.g.*, *Ex parte City of Tuskegee*, 932 So. 2d 895, 907 (Ala. 2005) (denying state-agent immunity when a plaintiff alleged that officers fabricated evidence). Accordingly, state-agent immunity is not appropriate at this stage. *See Ex parte Butts*, 775 So. 2d 173, 177–78 (Ala. 2000). The court therefore **WILL DENY** Officer Elmore motion based on state-agent immunity.

## III.    CONCLUSION

For the reasons above, the court **WILL GRANT IN PART** and **DENY IN PART** Officer Elmore's motion to dismiss. (Doc. 27). The court **WILL GRANT** the motion and **WILL DISMISS WITHOUT PREJUDICE** Count Three, Count Four with respect to the unreasonable seizure claim, Count Five, Count Seven, and

21

Count Ten with respect to Mr. Henry's claims. The court **WILL DENY** the motion in all other respects.

**DONE** and **ORDERED** this March 25, 2026.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE