FILED
2026 Mar-25  PM 02:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **MICAH WASHINGTON, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  7:25-cv-138-ACA** |
| | } | |
| **CITY OF REFORM, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Micah Washington, Jacorien Henry, and Shikeem Washington were changing a tire on the side of the road when Defendant Officer Dana Elmore, a police officer with the City of Reform, pulled behind the trio. Officer Elmore immediately ordered Micah[1] to produce identification. Although he complied, she tased Micah and handcuffed him. While Mr. Henry ran to a nearby relative's home, Shikeem video recorded the encounter. Officer Elmore called her husband, Defendant Pickens County Deputy Sheriff Jody Elmore, for back up. The two then detained Shikeem, called for additional law enforcement officials, and went to the nearby home to arrest Mr. Henry. After detaining all three individuals, Officer Elmore and Deputy Elmore

---

[1] The court refers to Micah Washington and Shikeem Washington by their first names to avoid confusion.

took Micah and Mr. Henry to the Pickens County Detention Center and charged each with several crimes.

Micah, Mr. Henry, and Shikeem now bring federal and state claims against Officer Elmore, Deputy Elmore, and the City of Reform. This memorandum opinion addresses only Defendant City of Reform's motion to dismiss, including the official capacity claims against Officer Elmore.[2] (Doc. 26). Accordingly, the court discusses only the claims against the City and Officer Elmore in her official capacity.

The plaintiffs assert five official capacity federal claims against Officer Elmore and one claim against the City of Reform under *Monell v. Department of Social Services*, 436 U.S. 658 (1978): a Fourth Amendment excessive force violation ("Count One"); Fourth Amendment unlawful search and seizure violations brought by Micah, Mr. Henry, and Shikeem ("Count Two," "Count Three," and "Count Four," respectively); deliberate indifference brought by Micah ("Count Seven"); and *Monell* liability ("Count Eight"). They also bring one state law claim against the City and three official capacity state law claims against Officer Elmore: municipal liability against the City ("Count Nine"); negligence ("Count Ten"); wantonness ("Count Eleven"); assault and battery ("Count Twelve").

---

[2] Claims against a police officer in their official capacity are "another way of pleading an action against an entity of which an officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quotation marks omitted). Thus, the official capacity claims against Officer Elmore are "directly against the city that [she] represents." *Id.*; *see also Morrow v. Caldwell*, 153 So. 3d 764, 771 (Ala. 2014).

For the reasons below, the court **WILL GRANT** the City of Reform's motion to dismiss. (Doc. 26). The court **WILL DISMISS WITH PREJUDICE** all official capacity claims against Officer Elmore and any request for punitive damages from the City of Reform. The court **WILL DISMISS WITHOUT PREJUDICE** Count Eight.

## I.    BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

In December 2023, Micah and Mr. Henry were driving to Micah's aunt's home when the duo pulled over to change a flat tire. (Doc. 21 ¶¶ 11–12). Micah's brother, Shikeem, was at the nearby home and came to help the pair. (*Id.* ¶ 13). As the three men changed the tire, Officer Elmore stopped behind them and approached the car. (*Id.* ¶¶ 13–14). Although the men believed she stopped to help them, Officer Elmore approached "angrily" and requested identification. (*Id.* ¶¶ 14–15). Micah questioned why Officer Elmore needed identification but nevertheless complied. (Doc. 21 ¶¶ 16–17). Officer Elmore instructed Micah to stand next to her car, which Micah again questioned. (*Id.* ¶ 18).

Micah then started to film the encounter. (*Id.* ¶ 19). Officer Elmore objected to Micah filming. (*Id.* ¶ 20). She then tased him for "several seconds" and ordered

him to get on the ground. (Doc. 21 ¶ 20). Micah pleaded for her to stop and told her that the pair had been changing a tire. (*Id.* ¶¶ 21–22). Officer Elmore then "mocked" Micah and told him to "shut the fuck up or she would tase him again." (*Id.* ¶¶ 23–24). Micah asked Mr. Henry to get help, so Mr. Henry ran to the nearby home. (*Id.* ¶¶ 25–26). Officer Elmore never told Mr. Henry he was under arrest or that he could not leave. (Doc. 21 ¶ 26).

Around the same time, Shikeem began filming. (*Id.* ¶ 27). As he videoed, Officer Elmore handcuffed Micah. (*Id.* ¶ 28). She then demanded Micah stand up and laid him on the hood of her vehicle. (*Id.* ¶¶ 29–30). Throughout the interaction, Micah complied with Officer Elmore's commands and did not resist. (Doc. 21 ¶¶ 29–31). Micah told Officer Elmore that he lawfully owned a gun, and it was on his person. (*Id.* ¶ 32). Officer Elmore then removed the gun and placed it out of his reach. (*Id.* ¶ 33). After removing the gun, Officer Elmore tased Micah again. (*Id.* ¶¶ 34–35).

Officer Elmore called Deputy Elmore for back up. (*Id.* ¶ 38). While waiting for him, Officer Elmore searched Shikeem. (*Id.* ¶¶ 38–39). Officer Elmore told Deputy Elmore that she had searched Shikeem, but he nonetheless searched Shikeem again when he arrived. (*Id.* ¶¶ 40–41). Deputy Elmore then handcuffed Shikeem, told him that he was detained, and placed Shikeem in the police car for twenty minutes. (*Id.* ¶¶ 43–44). Like Micah, Shikeem remained compliant. (Doc. 21 ¶ 42).

Officer Elmore and Deputy Elmore then called more law enforcement officials to the scene. (*Id.* ¶ 45). When the additional officers arrived, Deputy Elmore moved Shikeem from one police car to another. (*Id.* ¶ 46). Shikeem remained in that car for twenty additional minutes. (*Id.*).

Officer Elmore, Deputy Elmore, and the additional officers then turned their attention to Mr. Henry. (*See* doc. 21 ¶ 47). Officer Elmore, Deputy Elmore, and the additional officers went to the nearby home and "beat and kick[ed] on the front door." (*Id.*). Mr. Henry exited the home, where all the officers stood with their guns drawn. (*Id.* ¶¶ 48–49). One unknown officer grabbed Mr. Henry and searched his pockets. (*Id.* ¶ 49). Deputy Elmore handcuffed Mr. Henry and put him in a police car. (Doc. 21 ¶ 50).

Officer Elmore and Deputy Elmore transported Micah and Mr. Henry to the Pickens County Detention Center. (*Id.* ¶¶ 51–52). Deputy Elmore and Officer Elmore waited to formally charge Micah until they discussed their options. (*Id.* ¶¶ 53–54). Eventually, Officer Elmore charged him with obstructing government operations, resisting arrest, possession of marijuana, felon in possession of a firearm, and drug trafficking of fentanyl. (*Id.* ¶ 56). In doing so, she filed a complaint containing false information. (Doc. 21 ¶¶ 58–61). Micah was not a felon and never possessed fentanyl. (*Id.* ¶ 63). Officer Elmore and Deputy Elmore had "planted" the other drugs in Micah's vehicle. (*Id.* ¶ 64). The Pickens County District Attorney

5

dismissed the drug trafficking and felon in possession charges two days later. (*Id.* ¶ 62).

Officer Elmore also falsely charged Mr. Henry with resisting arrest, attempting to elude, possession of marijuana, and drug trafficking of fentanyl after initially waiting several hours. (Doc. 21 ¶¶ 66–67, 68). Two days later, the Pickens County District Attorney dismissed the drug trafficking charge, and officials released Mr. Henry from custody. (*Id.* ¶ 73). The District Attorney eventually dropped all charges against Mr. Henry. (*Id.* ¶ 74).

## II.   DISCUSSION

"To survive a motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1. Officer Elmore's Official Capacity Claims

For the federal official capacity claims against Officer Elmore, Micah, Mr. Henry, and Shikeem concede the claims against her are subsumed within Count Eight, the *Monell* claim against the City of Reform. (Doc. 43 at 6). Accordingly, the

court **WILL GRANT** the City's motion and **WILL DISMISS** the federal official capacity claims against Officer Elmore in Counts One, Two, Three, Four, and Seven.

Similarly, for the official capacity claims brought under state law against Officer Elmore, the trio concede dismissal is appropriate. (Doc. 43 at 8). Accordingly, the court **WILL GRANT** the City's motion and **WILL DISMISS** the official capacity claims against Officer Elmore in Counts Ten, Eleven, and Twelve.

### 2. City of Reform

Plaintiffs' complaint alleges two claims against the City of Reform, one on constitutional grounds under *Monell* (Count Eight) and the other under state law (Count Nine). The City of Reform does not move to dismiss Count Nine (*see* doc. 26), so the court does not address it.

The City argues that Count Eight fails to state a claim for relief and that the plaintiffs cannot recover punitive damages from the City. (*Id.* at 11–15, 17–18). The plaintiffs concede that the City of Reform cannot be liable for punitive damages. (Doc. 43 at 8). The court therefore **WILL GRANT** the City's motion and **WILL DISMISS** any request for punitive damages from the City of Reform. Accordingly, the court turns to whether Count Eight states a claim under *Monell*.

"To prove a *Monell* claim, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom

7

caused the violation." *Andre v. Clayton Cnty.*, 148 F.4th 1282, 1300 (11th Cir. 2025). "Normally random acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

Count Eight fails because Micah, Mr. Henry, and Shikeem do not identify any unconstitutional policy or custom. The complaint states that Officer Elmore acted "pursuant to a policy or custom" (doc. 21 ¶¶ 147–48), the City of Reform ratified the actions (*id.* ¶ 149), and it failed to investigate prior incidents (*id.* ¶ 82). But these are conclusory allegations that cannot state a claim. *See Iqbal*, 556 U.S. at 678. The plaintiffs do not allege a particular policy or support the alleged custom with allegations of other instances of excessive force or unreasonable seizures. *See Andre*, 148 F.4th at 1300–01. Accordingly, the court **WILL GRANT** the City of Reform's motion and **WILL DISMISS** Count Eight.

## III.   CONCLUSION

For the reasons above, the court **WILL GRANT** the City of Reform's motion and **WILL DISMISS WITH PREJUDICE** all official capacity claims against Officer Elmore and any request for punitive damages from the City of Reform. (Doc. 26). The court **WILL DISMISS WITHOUT PREJUDICE** Count Eight.

**DONE** and **ORDERED** this March 25, 2026.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE