FILED

2026 Mar-25 PM 02:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **MICAH WASHINGTON, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  7:25-cv-138-ACA** |
| | } | |
| **CITY OF REFORM, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Micah Washington, Jacorien Henry, and Shikeem Washington were changing a tire on the side of the road when Defendant Officer Dana Elmore, a police officer with the City of Reform, pulled behind the trio. Officer Elmore immediately ordered Micah[1] to produce identification. Although he complied, she tased Micah and handcuffed him. While Mr. Henry ran to a nearby relative's home, Shikeem video recorded the encounter. Officer Elmore called her husband, Defendant Pickens County Deputy Sheriff Jody Elmore, for back up. The two then detained Shikeem, called for additional law enforcement, and went to the nearby home to arrest Mr. Henry. After detaining all three individuals, Officer Elmore and Deputy Elmore took

---

[1] The court refers to Micah Washington and Shikeem Washington by their first names to avoid confusion.

Micah and Mr. Henry to the Pickens County Detention Center and charged each with several crimes.

Micah, Mr. Henry, and Shikeem now bring state and federal claims against Officer Elmore, Deputy Elmore, and the City of Reform. This memorandum opinion addresses only Deputy Elmore's motion to dismiss. (Doc. 36). Accordingly, the court discusses only the claims against Deputy Elmore.

Both Mr. Henry and Shikeem assert Fourth Amendment unlawful search and seizure violations ("Count Three" and "Count Four," respectively). Mr. Henry and Shikeem also bring state law claims against Deputy Elmore for negligence ("Count Ten") and false imprisonment ("Count Fourteen" and "Count Fifteen," respectively).

For the reasons below, the court **WILL GRANT IN PART** and **DENY IN PART** Deputy Elmore's motion. (Doc. 36). The court **WILL GRANT** the motion and **WILL DISMISS WITH PREJUDICE** all state law claims in Deputy Elmore's individual capacity. The court **WILL DISMISS WITHOUT PREJUDICE** all official capacity claims, Count Three, and Count Four with respect to the seizure of Shikeem. The court **WILL DENY** Deputy Elmore's motion in all other respects.

## I.    BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

2

In December 2023, Micah and Mr. Henry were driving to Micah's aunt's home when the duo pulled over to change a flat tire. (Doc. 21 ¶¶ 11–12). Micah's brother, Shikeem, was at the nearby home and came to help the pair. (*Id.* ¶ 13). As the three men changed the tire, Officer Elmore stopped behind them and approached the car. (*Id.* ¶¶ 13–14). Although the men believed she stopped to help them, Officer Elmore approached "angrily" and requested identification. (*Id.* ¶¶ 14–15). Micah questioned why Officer Elmore needed identification but nevertheless complied. (Doc. 21 ¶¶ 16–17). Officer Elmore instructed Micah to stand next to her car, which Micah again questioned. (*Id.* ¶ 18).

Micah then started to film the encounter. (*Id.* ¶ 19). Officer Elmore objected to Micah filming. (*Id.* ¶ 20). She then tased him for "several seconds" and ordered him to get on the ground. (Doc. 21 ¶ 20). Micah pleaded for her to stop and told her that the pair had been changing a tire. (*Id.* ¶¶ 21–22). Officer Elmore then "mocked" Micah and told him to "shut the fuck up or she would tase him again." (*Id.* ¶¶ 23–24). Micah asked Mr. Henry to get help, so Mr. Henry ran to the nearby home. (*Id.* ¶¶ 25–26). Officer Elmore never told Mr. Henry he was under arrest or that he could not leave. (Doc. 21 ¶ 26).

Around the same time, Shikeem began filming. (*Id.* ¶ 27). As he videoed, Officer Elmore handcuffed Micah. (*Id.* ¶ 28). She then demanded Micah stand up and laid him on the hood of her vehicle. (*Id.* ¶¶ 29–30). Throughout the interaction,

Micah complied with Officer Elmore's commands and did not resist. (Doc. 21 ¶¶ 29–31). Micah told Officer Elmore that he lawfully owned a gun, and it was on his person. (*Id.* ¶ 32). Officer Elmore then removed the gun and placed it out of his reach. (*Id.* ¶ 33). After removing the gun, Officer Elmore tased Micah again. (*Id.* ¶¶ 34–35).

Officer Elmore called Deputy Elmore for back up. (*Id.* ¶ 38). While waiting for him, Officer Elmore searched Shikeem. (*Id.* ¶¶ 38–39). When Deputy Elmore arrived, Officer Elmore told him that she had searched Shikeem, but Deputy Elmore nonetheless searched Shikeem again. (*Id.* ¶¶ 40–41). Deputy Elmore then handcuffed Shikeem, told him that he was detained, and placed Shikeem in the police car for twenty minutes. (*Id.* ¶¶ 43–44). Like Micah, Shikeem remained compliant. (Doc. 21 ¶ 42). The two officers then called for backup. (*Id.* ¶ 45). When the additional officers arrived, Deputy Elmore moved Shikeem from one police car to another. (*Id.* ¶ 46). Shikeem remained in that car for twenty additional minutes. (*Id.*).

Officer Elmore, Deputy Elmore, and the additional officers then turned their attention to Mr. Henry. (*See* doc. 21 ¶ 47). Officer Elmore, Deputy Elmore, and the additional officers went to the nearby home and "beat and kick[ed] on the front door." (*Id.*). Mr. Henry exited the home, where all the officers stood with their guns drawn. (*Id.* ¶¶ 48–49). One unknown officer grabbed Mr. Henry and searched his

pockets. (*Id.* ¶ 49). Deputy Elmore handcuffed Mr. Henry and put him in a police car. (Doc. 21 ¶ 50).

Officer Elmore and Deputy Elmore transported Micah and Mr. Henry to the Pickens County Detention Center. (*Id.* ¶¶ 51–52). Deputy Elmore and Officer Elmore waited to formally charge Micah until they discussed their options. (*Id.* ¶¶ 53–54). Eventually, Officer Elmore charged him with obstructing government operations, resisting arrest, possession of marijuana, felon in possession of a firearm, and drug trafficking of fentanyl. (*Id.* ¶ 56). In doing so, she filed a complaint containing false information. (Doc. 21 ¶¶ 58–61). Micah was not a felon and never possessed fentanyl. (*Id.* ¶ 63). Officer Elmore and Deputy Elmore had "planted" the other drugs in Micah's vehicle. (*Id.* ¶ 64). The Pickens County District Attorney dismissed the drug trafficking and felon in possession charges two days later. (*Id.* ¶ 62).

Officer Elmore also falsely charged Mr. Henry with resisting arrest, attempting to elude, possession of marijuana, and drug trafficking of fentanyl after initially waiting several hours. (Doc. 21 ¶¶ 66–67, 68). Two days later, the Pickens County District Attorney dismissed the drug trafficking charge, and officials released Mr. Henry from custody. (*Id.* ¶ 73). The District Attorney eventually dropped all charges against Mr. Henry. (*Id.* ¶ 74).

## II.    DISCUSSION

Deputy Elmore moves to dismiss all claims against him. He moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss all official capacity claims against him because sovereign immunity under the Eleventh Amendment bars the claims. (Doc. 37 at 4–6). The plaintiffs concede this point. (Doc. 48 at 7). Because Deputy Elmore is entitled to sovereign immunity, the court lacks jurisdiction over the official capacity claims and **WILL GRANT** and **WILL DISMISS** those claims. *See McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001).

For the federal and state law claims against him in his individual capacity, Deputy Elmore moves to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6). Deputy Elmore argues that he is entitled to qualified immunity for the federal claims against him and absolute immunity under § 14 of the Alabama Constitution for the state law claims. (Doc. 37 at 7–22, 23—32). The court addresses each of these arguments in turn.

### 1. Federal Claims

"To survive a motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

6

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### a. Qualified Immunity

Deputy Elmore asserts he is entitled to qualified immunity for the federal claims against him. (Doc. 37 at 7–23). Qualified immunity protects all government officials except those who are plainly incompetent or knowingly violate federal law from the duty of defending their actions and liability. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "So long as a government official acts within the scope of his discretionary authority and does not violate clearly established law, the doctrine of qualified immunity protects him." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

A government official who asserts qualified immunity bears the initial burden of "proving that he was acting within his [discretionary] authority." *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). Deputy Elmore satisfies this burden by establishing that plaintiff's alleged constitutional injury occurred while he was: (1) doing the type of action that fell within his general job responsibilities; and (2) within the scope of his authority. *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017); *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265–66 (11th Cir. 2004); *see also Donald v. Norris*, 131 F.4th 1255, 1264 (11th Cir. 2025).

7

To satisfy the first prong, Deputy Elmore does not have to establish that he committed the act for a constitutional purpose, in a constitutional manner, to a constitutional extent, or under constitutionally appropriate circumstances. *Holloman*, 370 F.3d at 1266. Nor does Deputy Elmore have to establish that he was specifically authorized to do the exact thing he was doing at the time the injury allegedly occurred. *See id.* So long as he was doing something that, if done for a proper purpose, "would be within, or reasonably related to, the outer perimeter" of her discretionary duties, he sustains her burden for that prong. *Donald*, 131 F.4th at 1264 (quotation marks omitted).

To satisfy the second, Deputy Elmore need only establish that the State of Alabama authorized her to perform the duty. *Cummings,* 906 F.3d at 940; *see also Harbert Int'l*, 157 F.3d at 1283; *Lenz v. Wibburn,* 51 F.3d 1540, 154647 (11th Cir. 1995).

Deputy Elmore identifies the statutory authority establishing his duty as a deputy sheriff and cites the allegations within the amended complaint to establish he was acting within his powers when the alleged injury occurred. (Doc. 37 at 9–10). This satisfies Deputy Elmore's burden of production. *See Donald*, 131 F.4th at 1264. Micah, Mr. Henry, and Shikeem's argument that Deputy Elmore assisting his wife with an illegal search and seizure were actions not within his discretionary authority does not change the court's analysis. (Doc. 48 at 9–11). This argument focuses on

8

the constitutionality of his actions, which is not relevant to the question of whether Deputy Elmore acted within his discretionary authority. *See Donald*, 131 F.4th at 1264.

Because Deputy Elmore carried his burden for this stage of the proceedings, Micah, Mr. Henry, and Shikeem must establish Deputy Elmore violated clearly established law for each claim where he asserts qualified immunity.

### b.  Count Three

Count Three alleges that Deputy Elmore violated Mr. Henry's Fourth Amendment rights to be free from unlawful search and seizure when he beat and kicked on the door of the house, ordered him to come out at gunpoint, searched his person, handcuffed him, and transported him to the detention center—all without probable cause or reasonable suspicion. (Doc. 21 ¶¶ 103, 105–06). Among other arguments, Deputy Elmore contends that the complaint fails to identify the conduct of each officer and that Deputy Elmore had arguable probable cause to arrest Mr. Henry and that any search was incident to a lawful arrest. (Doc. 37 at 11–18).

As the court held with respect to Count Three against Officer Elmore, any claim based on conduct that occurred before Deputy Elmore handcuffed Mr. Henry is due to be dismissed because it fails to identify Deputy Elmore's actions. *See Ashcroft*, 556 U.S. at 679. Moreover, even if it did allege a search, that search would be incident to an arrest. As to the claim that Deputy Elmore handcuffed Mr. Henry

9

and transported him to jail, Deputy Elmore is entitled to qualified immunity because he had arguable probable cause.

### i.    Seizure

A warrantless arrest requires probable cause. *Alston v. Swarbrick*, 954 F.3d 1312, 1318 (11th Cir. 2020). To have probable cause, the totality of the circumstances—viewed from the perspective of a reasonable officer—must establish "a probability or substantial chance of criminal activity." *Washington v. Howard*, 25 F.4th 891, 898–99 (11th Cir. 2022). "Although an arrest made without probable cause violates the Fourth Amendment, an officer is entitled to qualified immunity if he has arguable probable cause." *Richmond v. Badia*, 47 F.4th 1172, 1181 (11th Cir. 2022) (quotation marks omitted); *see Garcia v. Casey*, 75 F.4th 1176, 1187 (11th Cir. 2023) (noting that "arguable probable cause" is "a useful shorthand to collapse" to collapse the "clearly established" analysis "into a single question in a wrongful arrest case").

"Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiff." *Id.* (quotation marks omitted). Courts look at the elements of the alleged crime and the operative facts to determine whether the officer had arguable probable cause. *Skop v. City of Atlanta*, 485 F.3d 1130, 1137–38 (11th Cir. 2007). And Deputy Elmore is entitled to qualified

immunity if he had arguable probable cause to arrest Mr. Henry for any crime. *See Garcia v. Casey*, 75 F.4th 1176, 1187 (11th Cir. 2023).

Deputy Elmore argues a reasonable officer could have believed Mr. Henry fled the scene. (Doc. 37 at 15–16; doc. 53 at 6). Under Alabama law, it is illegal for "a person to intentionally flee by any means from anyone the person knows to be a law enforcement officer if the person knows the officer is attempting to arrest the person." Ala. Code § 13A-10-52(a). The complaint alleges that, when Deputy Elmore arrived on scene, he saw Micah handcuffed with a gun lying beside him and was immediately instructed him to detain Shikeem (Doc. 21 ¶¶ 33, 38, 41). Mr. Henry was not present, and there is no allegation that Deputy Elmore knew that Officer Elmore did not tell Mr. Henry that he was not free to leave the scene. (*Id.* ¶¶ 26, 47–50). A reasonable officer could have concluded that Mr. Henry improperly left the scene. Accordingly, Deputy Elmore had arguable probable cause; thus, any constitutional violation would not be clearly established. *See District of Columbia v. Wesby*, 583 U.S. 48, 58 (2018) ("In the context of a warrantless arrest, the rule must obviously resolve whether the circumstances with which the particular officer was confronted constituted probable cause. (cleaned up)").

Mr. Henry's arguments focus on what Officer Elmore knew and whether her actions were lawful. (Doc. 48 at 13–15). Because Deputy Elmore arrived on scene later, he is not required to immediately conduct a new investigation. *See Wilkerson*

*v. Seymour*, 736 F.3d 974, 979–80 (11th Cir. 2013). And Mr. Henry seemingly relies on post-arrest facts to support his false arrest claim, including that Deputy Elmore helped falsely charge him with various crimes and planted drugs at the scene. (Doc. 48 at 14–15 & n.3; doc. 21 ¶¶ 66–75, 100). But those post-arrest allegations would be relevant to a false imprisonment or malicious prosecution claim, not a false arrest claim. *See Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996) (outlining the difference between claims for false arrest and false imprisonment). Accordingly, the court **WILL GRANT** Deputy Elmore's motion

### ii.    Search

An officer may search an individual incident to a lawful arrest. *United States v. Robinson*, 414 U.S. 218, 235 (1973). The search must "connect to or arise out of arrest, limiting the search to the person of the arrestee or an area they control." *United States v. Pugh*, 90 F.4th 1318, 1328 (11th Cir. 2024). As long as the law officer has probable cause to arrest the individual, the search may precede the arrest. *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980). Because the court concludes that Deputy Elmore had arguable probable cause to arrest Mr. Henry, Deputy Elmore was entitled to search Mr. Henry incident to the arrest. Thus, to the extent that Count Three sufficiently alleges that Deputy Elmore searched Mr. Henry, it was lawful to do so. The court therefore **WILL GRANT** his motion.

c. *Count Four*

Count Four alleges that Deputy Elmore violated Shikeem's Fourth Amendment rights when Deputy Elmore searched him a second time and detained him for forty minutes in the police cars. (Doc. 21 ¶¶ 114–16).

### i. Search

Although Deputy Elmore's motion seeks to dismiss Count Four completely, Deputy Elmore did not sufficiently argue that Shikeem did not plead an illegal search. In one sentence, Deputy Elmore states that "it us up to the Court to speculate as to whether Deputy Elmore had probable cause to search and detain S.W." (Doc. 37 at 20). But Deputy Elmore cites only cases about illegal seizures and offers no substantive analysis about the alleged unreasonable search. (*See id.* at 19–20); *see Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting a party does not sufficiently raise an issue when they "make passing references . . . without advancing any arguments or citing any authorities"). Because Deputy Elmore did not sufficiently raise the issue, the court declines to address it and **WILL DENY** the motion with respect to the claim based on an unreasonable search.

### ii. Seizure

Generally, the Fourth Amendment requires that police officers have individualized suspicion to stop someone under *Terry*. *United States v. Lewis*, 674 F.3d 1298, 1305 (11th Cir. 2012). But officers can briefly detain individuals even

13

absent individualized suspicion in some situations, so long as the detention is reasonable. *Michigan v. Summers*, 452 U.S. 692, 702–03 (1981); *United States v. Mastin*, 972 F.3d 1230, 1237–38 (11th Cir. 2020). To determine whether the seizure is reasonable, courts consider the totality of the circumstances, including the presence of a gun, proximity to suspected criminal activity, and the ability for officers to investigate or arrest suspects. *Lewis*, 674 F.3d at 1305–09.

Here, Deputy Elmore arrived on scene and witnessed Micah in handcuffs with a gun beside him. (Doc. 21 ¶¶ 30, 33, 41). Officer Elmore instructed him to detain Shikeem. (*Id.*). After detaining Shikeem, both Deputy Elmore and Officer Elmore investigated and arrested Micah and Mr. Henry. (*Id.* ¶¶ 46–51). Because of officer safety concerns, *see Summers*, 452 U.S. at 702–03, it was reasonable for Deputy Elmore to briefly detain Shikeem.

Moreover, even assuming Deputy Elmore's actions were unconstitutional, Shikeem has not satisfied his burden to prove Deputy Elmore violated clearly established law. He argues only that Deputy Elmore lacked arguable probable cause. (Doc. 48 at 18). But as explained above, Deputy Elmore could briefly detain Shikeem without individualized suspicion. *See United States v. Clark*, 337 F.3d 1282, 1286–87 (11th Cir. 2003). Accordingly, Deputy Elmore is entitled to qualified immunity. The court **WILL GRANT** Deputy Elmore's motion relating to the seizure of Shikeem.

2. State Claims

Counts Ten, Fourteen, and Fifteen are state law claims against Deputy Elmore. Sheriffs and their deputies are immune from claims seeking monetary damages in their official capacity. Ala. Const. Art. 1, § 14; *see also Parker v. Amerson*, 519 So. 2d 442, 442–43 (Ala. 1987). In addition, they are generally immune from claims seeking monetary damages made against them in their individual capacity that arise "out of the execution of the duties of their office." *Ex parte Underwood*, -- So. 3d --, 2025 WL 1776225, at *2 (Ala. June 27, 2025) (quotation marks omitted) (alteration accepted).

Mr. Henry and Shikeem argue Deputy Elmore is not immune under § 14 immunity because § 14 does not apply to Deputy Elmore in his individual capacity and he "exceeded the scope of his authority." (Doc. 48 at 19–21). But *Ex parte Underwood*, decided the day after Mr. Henry and Shikeem filed their brief, clarified that deputy sheriffs are constitutional officers who are immune from suit. 2025 WL 1776225 at *3 n.2, *4. And the court finds Deputy Elmore acted within the scope of his duties for the same reasons he acted within the scope of his discretionary authority for the purpose of qualified immunity. Accordingly, the court **WILL GRANT** Deputy Elmore's motion and **WILL DISMISS** all state law claims against him in his individual capacity.

15

## III.   CONCLUSION

For the reasons above, the court **WILL GRANT IN PART** and **DENY IN PART** Deputy Elmore's motion. (Doc. 36). The court **WILL DISMISS WITH PREJUDICE** all state law claims against him in his individual capacity. The court **WILL DISMISS WITHOUT PREJUDICE** all official capacity claims, Count Three, and Count Four with respect to the seizure of Shikeem. The court **WILL DENY** Deputy Elmore's motion in all other respects.

**DONE** and **ORDERED** this March 25, 2026.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

16